EXHIBIT A

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO. 16-008262-CD Hon. Muriel Hughes |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-2415

| **Plaintiff** Hubbell, Sheryl | v | **Defendant** Fedex Smartpost Inc. |
|---|---|---|
| **Plaintiff's Attorney** Raymond Guzall, P-60980 31555 W 14 Mile Rd Ste 320 Farmington Hills, MI 48334-1288 | | **Defendant's Attorney** |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 6/29/2016 | This summons expires 9/28/2016 | Court clerk File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☒ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in *U.S. Eastern District Michigan* Court. The action ☒ remains ☐ is no longer pending. The docket number and the judge assigned to the action are: *14-13897, STech*

| Docket no. *14-13897* | Judge *STech* | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

*7/18/2016*

Date

Signature of attorney/plaintiff



If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

db

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SHERYL HUBBELL,

                Plaintiff,

vs.

FEDEX SMARTPOST, INC.,
a foreign profit corporation doing
business in Michigan,

             Defendant.

_____/

Case No.              -CD

16-008262-CD
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/29/2016 1:14:19 PM
CATHY M. GARRETT

RAYMOND GUZALL III (P60980)
RAYMOND GUZALL III, P.C.
Attorney for Plaintiff
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
(248) 702-6122            /

          A civil action between these parties arising or other parties arising out of
          the transaction or occurrence alleged in this complaint has been
          previously filed in Federal Court, Detroit Michigan, where it was given
          docket number 14-13897 and was assigned to Judge Steeh.  The action
          remains pending.

## VERIFIED COMPLAINT AND DEMAND FOR JURY

NOW COMES Plaintiff, SHERYL HUBBELL, by and through her attorney,

Raymond Guzall III, P.C., by Raymond Guzall III, and for her Complaint against FEDEX

SMARTPOST, INC., a foreign profit corporation doing business in the State of

Michigan, states as follows:

1

## COUNT I
## GENDER DISCRIMINATION

1. Plaintiff SHERYL HUBBELL, is female, and at all times pertinent hereto, was employed by the Defendant FEDEX SMARTPOST, INC., in Wayne County, State of Michigan.

2. Defendant FEDEX SMARTPOST, INC., is a foreign profit corporation doing business in the State of Michigan, in Wayne County, State of Michigan.

3. Plaintiff's employment was terminated by Defendant on December 15, 2014.

4. Plaintiff worked for Defendant for approximately 8 years.

5. Men and women were treated differently at Fedex SmartPost and Plaintiff was discriminated against based on her gender. (Exhibit 1, Affidavit of Alphonse S. Reed and Exhibit 2, Affidavit of Rebecca McCloskey).

6. Ms. Hubbell was singled out in regards to discipline and treated differently than other similarly situated male employees. (Exhibits 1 and 2).

7. Plaintiff was denied promotions and management positions by Defendant based on her gender and male employees were given promotions and management positions ahead of her. (Exhibits 1 and 2).

8. In 2010, Plaintiff applied and interviewed for a management position but it was given to a male employee that Plaintiff had trained.

9. Plaintiff was discouraged by Management from applying for leadership roles and management positions because of her gender, whereas male employees were encouraged to apply for management positions.

10. Plaintiff was told numerous times by management that she should stop

2

considering or applying for management positions because of her gender.

11. Plaintiff was told by Defendant's Management that women are better suited for administrative positions and men are better suited for management positions.

12. On another occasion, Plaintiff was told by Management, "Not to sound sexist, but most women perform better in administrative roles and seem to trend toward those roles," and that, "male employees do better in leadership roles and most females don't possess the competencies necessary to be successful as leaders, that is why you find more women as secretaries or clerks."

13. Plaintiff was told by a "hub manager" that he had no intention on promoting her to management positions because of her gender, yet male employees were encouraged to pursue management positions and in fact were given those positions which included increased compensation.

14. Plaintiff was told by management and human resources to demote from her position as a Lead based on her gender.

15. Plaintiff was demoted to a role that did not include leadership supervisor duties by Defendant based upon her gender.

16. Plaintiff was not allowed to attend certain meetings that as her position as a Lead *required*, yet male employees similarly situated as Plaintiff *were* allowed to attend.

17. Plaintiff was belittled, demeaned and treated with hostility by management after making complaints of management's discrimination towards women in general, but more particularly, herself.

18. Plaintiff was treated differently by management after she made her complaints.

3

Subsequently, management began to give her write-ups and poor reviews so she couldn't advance, despite many of her full time co-workers who are of the opinion she does a great job and are of the opinion she is being harassed by management for speaking out and engaging in protected activities.

19. After Defendant brought in Todd Treman to be the hub manager in the beginning of 2011, Plaintiff and women in general were treated harsher by the Defendant. Throughout the year of 2011, more females were demoted than males and more males were hired or promoted to management positions.

20. At the beginning of the year 2012, there were ten male managers and one female manager.

21. In January 2012, Plaintiff was called into a meeting with management and human resources where she was told by the hub manager, Todd Treman, "This is the last chance I'll give you to take a step down, things will continue to get harder for you from here on out if you don't."  Plaintiff was further told, "Leadership roles are typically suited for male employees, I don't understand why you won't comply with my requests [to step down or demote herself], you've been asked many times now."

22. Plaintiff was given less of a raise than all other employees when raises were previously distributed in the year 2013.

23. Fedex SmartPost attempted to cover up the fact that they discriminate against women in the workplace, as in one example, by promoting a part time female employee to a full time Lead and then to a Dock Manager all within a matter of

4

months, and that never had been done before in that short of a time span with
any other employee.

24.     That attempt to cover up the fact that Defendants discriminate against women in
the workplace by promoting a part time female employee to a full time Lead and
then to a Dock Manager all within a matter of months was done after Plaintiff
filed her complaint of gender discrimination with the EEOC/Michigan Department
of Civil Rights.

25.     Plaintiff was treated differently by Defendants because of her gender, in violation
of the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101, et seq..

26.     The Court has jurisdiction based upon Plaintiffs state law claims, and venue is
proper with this Court.

27.     Defendant has an illegal pattern and practice of discriminating against female
employees and Manager Todd Treman has an illegal habit of discriminating
against female employees.  (Exhibits 1 and 2).

28.     Disparate treatment is evident from the facts plead herein as Plaintiff being a
female employee was a motivating factor in the adverse employment actions
taken against Plaintiff and Plaintiff was terminated under circumstances that give
rise to an inference of unlawful discrimination.

29.     Defendant claims they took adverse employment actions against Plaintiff and
terminated Plaintiff for legitimate reasons.

30.     Plaintiff's employment was unlawfully terminated by Defendants because of her
gender, in violation of the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101,
et seq.

31.  Defendant engaged in discriminatory practice with malice or with reckless indifference to Plaintiff's protected rights, as plead herein.

32.  Defendant's management made statements regarding how they discriminate against their female employees.

33.  Plaintiff filed a complaint with the EEOC/Michigan Department of Civil Rights against Fedex SmartPost in approximately October 2013 alleging sex/gender discrimination and retaliation discrimination closing out that complaint.

34.  Plaintiff's Right to Sue Letter was mailed out on approximately July 16, 2014 closing out the EEOC complaint.

35.  Because of the illegal conduct of the Defendant, Plaintiff has suffered emotional damages and wage loss, among other damages as stated herein, and to be included within this Count.

## COUNT II
## RETALIATION

36.  Plaintiff re-alleges and incorporates Paragraphs 1 through 35 as though set forth in full word for word and paragraph for paragraph.

37.  Plaintiff filed a complaint with the EEOC/Michigan Department of Civil Rights against Fedex SmartPost in approximately October of 2013.

38.  Plaintiff's Right to Sue letter was postmarked July 22, 2014, and she received another Right to Sue letter in late August of 2014, closing out her EEOC complaints.

39.  Plaintiff's Complaint is timely filed with this Court.

40.  Plaintiff has been retaliated against by the Fedex SmartPost management to an

extreme that no one has ever seen before at that office.  (Ex. 1 and 2).

41.    Plaintiff suffered an increase in hostile treatment after filing the EEOC complaint.

42.    Plaintiffs every action was even more closely monitored after filing the EEOC complaint.

43.    Plaintiff was retaliated against in November 2013 when she called off work 1 hour before her scheduled shift and later provided management with a doctor note for an excused absence. Although Plaintiff had called in 1 hour ahead of shift and provided  medical documentation for the absence, Plaintiff was still issued a write up for un-excused absence and not offered vacation day as compensation. Plaintiff had followed company attendance policy, and the Defendant Company refused to follow their own policy.

44.    Plaintiff filed another charge with the EEOC/Michigan Department of Civil Rights against Fedex Smart on or about March 10, 2014 alleging retaliation.

45.    Plaintiff was retaliated against in violation of the Michigan Elliott Larsen Civil Rights Act, MCL 37.2101, et seq., and other applicable law, and in particular, MCL 37.2701 because she filed a discrimination charge with the Michigan Department of Civil Rights/EEOC, against Defendant.

46.    After filing the EEOC complaint, Plaintiff was written up for an un-excused absences even though Plaintiff followed the company attendance policy.

47.    After filing the EEOC complaint, Plaintiff was frequently written up for fabricated violations and or treated worse by management for violations they alleged against her and proceeded to take action in front of other employees whereas no one else was treated that way, in an attempt to build up a documented excuse

7

for the Defendant employer to keep Plaintiff from being promoted and to build an excuse to terminate Plaintiff in the future.

48.    After filing the EEOC complaint, Defendant attempted to force Plaintiff to accept and approve changes imposed by management to her time-sheet in violation of company policy and procedure and when she wouldn't sign off on the changes, she was threatened with insubordination and additional write ups. Plaintiff was eventually written up for not approving the time-sheet changes made by management.

49.    In approximately March, 2014, Plaintiff was retaliated against when she was issued a write-up in her work area in front of other employees for a claimed mis-sorted package although Management knew that there had been floor plan changes in her work area and the shipping crew also typically made changes to package locations after employees had left the area. Plaintiff was treated differently than other employees as other employees had been given a grace period for claimed mis-sorts and some were only given a verbal counseling with the floor plan change, yet Plaintiff was forced to sign a written disciplinary action form.

50.    In approximately April 2014, Plaintiff was retaliated against when she was approved to leave work early for being sick by John McLaughlin and Steve Hillebrand, managers. However, Defendant's then violated their own policy, as Plaintiff was still written up for an un-excused absence despite the managers approval and the subsequent doctors note Plaintiff had submitted the next day to them. That was not done to other employees who have been in the same

8

situation, only done to Plaintiff.

51.    Plaintiff was retaliated against by managers, when threatened with disciplinary

action if she did not remove her tinted safety glasses that she had a medical

note for.  That treatment was not done to other employees including a previous

employee who had worn sunglasses for a considerable length of time on daily

basis.

52.    On or around April 2014, Plaintiff was not compensated by Defendant after

Defendant requested that Plaintiff leave after lunch and then take the next week

off, where normally employees are compensated by management when told to

leave the facility for reasons assigned by management.  Management then

attempted to cover that up by sending a letter to Plaintiff's house pretending to

not know the reason Plaintiff left work.

53.    On or around May 2, 2014 Plaintiff was retaliated against when Plaintiff

attempted to pick up her paycheck from a clerk and manager, Josh Ocelnik,

refused to give Plaintiff her paycheck unless she would agree to clock in and

approve unnecessary alterations in Mytime program that Defendant made to her

time sheet.  Ocelnik tried to set Plaintiff up in an argument by refusing to give her

the check until a driver witnessed what was going on.  Ocelnik then gave Plaintiff

the check, and Plaintiff found out later that Ocelnik told the clerk that he would

need him to sign a statement that Plaintiff was rude and displayed unnecessary

conduct.  Other employees who came to pick up paychecks were not told to

clock in and approve changes to their time sheets before they would be given

their paychecks.

9

54.   On or around May 6 or 7th, 2014  Plaintiff was retaliated against when Defendant
      disabled her badge so that she could not clock in or out all day in the computer,
      forcing Plaintiff to have to report her time-sheet to management on paper.  The
      next day, Plaintiff was confronted by management in front of Plaintiff's co-
      workers, to harass and embarrass Plaintiff, and told to stop what she was doing
      and immediately go to the time clock and approve changes in the Mytime
      program even though it is against company policy to force an approval to the
      time-sheet without giving Plaintiff the proper time as stated in the MyTime
      program rules which Plaintiff follows.

55.   On or around June and August, 2014, Plaintiff was retaliated against further
      when Defendants recognized Plaintiff's peers with awards at a big monthly
      meeting with all employees and management present, yet Plaintiff was purposely
      by-passed from receiving acknowledgments or awards.  Further, Plaintiff was not
      allowed to be recognized like her peers because she is restricted from assuming
      a leadership role per the demotion instructions by management.

56.   On or about, June 19, 2014, Plaintiff was retaliated against when manager Chris
      Jensen told Plaintiff in front a coworker that Plaintiff violated the company
      security policy when Plaintiff used the restroom without first requesting
      permission from management.  Plaintiff was treated differently when a Manager
      accused Plaintiff of committing a breach of security for using the restroom.  This
      was not done to other employees, but only done to Plaintiff.

57.   On or around July 2, 2014, Plaintiff was retaliated against when managers
      William N. and Lauren F. told Plaintiff's Supervisor over the radio to send Plaintiff

out early from work for speaking with a co-worker. This was not done to other employees who spoke to their co-workers, only to Plaintiff.

58. On or around, July 28, 2014, Plaintiff was retaliated against when a manager asked a coworker what she and Plaintiff were talking about while they were clocked out for lunch, Plaintiff was treated differently than other employees as Management did not inquire to the content of other employee conversations off the clock.

59. On October 8, 2014 Plaintiff filed a lawsuit against Defendant in Federal court in Detroit Michigan.

60. Within two months of Defendants being served Plaintiff's lawsuit, her employment was terminated.

61. On February 2, 2015, Plaintiff filed a Complaint with the EEOC alleging that she was retaliated against for the filing of her Complaint with the U. S. Federal Court.

62. Plaintiff's Right to Sue Letter was mailed on March 5, 2015, closing out her February 2, 2015 EEOC complaint.

63. Plaintiff was unlawfully retaliated against by Defendant as Defendant terminated Plaintiff on December 15, 2014 for filing her EEOC complaint against Defendant on October 8, 2014.

## COUNT III
## HOSTILE WORK ENVIRONMENT - Retaliation

64. Plaintiff re-alleges and incorporates Paragraphs 1 through 63 as though set forth in full word for word and paragraph for paragraph.

11

65.  Defendant denied Plaintiff's login access to its' computers in approximately
     August or September 2013 (which access she had since June of 2007).

66.  Defendant employees told Plaintiff that she was no longer allowed to
     access Defendants' computer system in approximately August or September of
     2013.

67.  All other Defendant employees were allowed to clock in differently than Plaintiff
     and therefore she was being paid less money than all other employees in her
     classification.  (Ex. 2, Affidavit of Rebecca McCloskey, paragraph 16).

68.  Defendant, subsequent to the EEOC filings, increased its' level of hostility toward
     Plaintiff to the point that they were watching and timing her every move including
     any conversation she had with co-workers and how much time she spends in the
     bathroom.  (Ex. 2, Affidavit of Rebecca McCloskey, paragraph 15).

69.  Defendant's did not treat any other employee like they treated Plaintiff, and by
     their actions caused her additional harm and stress.  (Ex. 2, paragraph 15).

70.  Defendant increased its' hostile treatment of Plaintiff subsequent to the EEOC
     complaints in that management for the Defendant told Plaintiff's Supervisors and
     co-workers not to speak to the Plaintiff, and if they did speak to her they would
     question that employee as to the content of the conversation, including
     conversations that were "off the clock", causing Plaintiff and coworkers fear and
     further alienating Plaintiff from the rest of her coworkers.  No other employee
     received that kind of hostile treatment.

71.  Starting around late October of 2013, Defendants' security guards were directed
     to wand Plaintiff for metal upon entry to the building every day, even though she

did not beep when going through the metal detectors,

72.  Defendant also frequently checked Plaintiffs' signature on the sign out log sheets to use the restroom.

73.  Plaintiff was only given a 3 minute window to clock into work, and was not allowed to clock in outside of that 3 minute window.  However, all other like Defendant employees (Plaintiff's peers) were allowed to clock into work up to 15 minutes prior to their shift starting, and Plaintiff was not allowed to do so, in continuation of the hostile work environment against Plaintiff.

74.  Plaintiff was subject to hostile treatment by way of threats and intimidation by Defendant.

75.  In further attempt to maintain the hostile work environment, Plaintiff was threatened with write ups for insubordination by Defendant.  At times, Defendant executed on their threats. No other employee of Defendant endured anything close to that kind of treatment.

76.  For approximately 2 to 3 weeks in February of 2014, Plaintiff was forced to sign off on her time sheets by Defendant on almost a daily basis, when it was not necessary to do so, as the time sheets were accurate.  Yet Defendant made unnecessary changes to Plaintiff's time sheets anyway, and tried to force her to sign off on them.

77.  Plaintiff then complained to Human Resources on or about February 6, 2014 about the fact that Defendant made unnecessary changes to Plaintiff's time sheets, and tried to force her to sign off on them, and yet that behavior by Defendant still continued for weeks.

13

78.   Plaintiff had no disciplinary actions in her work record until Todd Treman came

into management at Defendant FedEx at the location Plaintiff worked.

79.   Plaintiff did not have any bad work reviews until Todd Treman came into

management at Defendant FedEx at the location Plaintiff worked.

80.   Plaintiff received numerous awards and recognition for her work until Todd

Treman came into management at Defendant FedEx.

81.   The retaliatory acts taken by Defendant against Plaintiff created the hostile work

environment against Plaintiff.

82.   Defendant did everything they could do to make Plaintiff's life at work as horrible

and as hostile as possible so she would quit her job, and ultimately forced her to

seek medical advice.

83.   Defendant intentionally set Plaintiff up to fail on the job and attempted to

sabotage her in the workplace.

84.   The hostile work environment created by Defendants substantially interfered with

Plaintiff's employment.

85.   As a result of Defendant's illegal acts as outlined and stated herein, Plaintiff has

been greatly damaged, in violation of the afore-stated causes of action, in that

she has suffered and will be forced to suffer great economic and emotional

harm, a loss of earning capacity, salary loss, emotional injuries with pain and

suffering, including but not limited to emotional distress and mental anguish, all

of which she has suffered as a result of the treatment by Defendant named

herein, and from which Plaintiff currently suffers and can reasonably be expected

to suffer from for the rest of her life.

14

86.   The wrongful and illegal actions of Defendant have damaged, and continue to

damage Plaintiff, including but not limited to past, current and future wage loss

and other benefits including but not limited to 401k loss, costs, interest,

exemplary and/or punitive damages and attorney fees.

87.   Plaintiff has been damaged well in excess of the jurisdictional amount of

$25,000.00.

88.   On December 15, 2014, Defendant retaliated against Plaintiff for her engaging in

protected activity and terminated her employment with Defendant.

WHEREFORE, your Plaintiff prays for judgment against Defendant, FEDEX

SMARTPOST, a foreign for profit corporation doing business in the State of Michigan,

in an amount well in excess of the jurisdictional amount of $25,000.00, plus costs and

interest, including past, current and future damages and wage loss, 401k loss and other

benefits, exemplary damages, punitive damages, and attorney fees for the illegal acts

of Defendant as stated herein, and all other damages afforded by law to Plaintiff.

Plaintiff further requests all other relief the Court deems appropriate in her favor as

afforded by law.

The facts as stated within this Verified Complaint are true to the best of my

knowledge, information and belief, and I will testify so in court.

_Sheryl Hubbell_

SHERYL HUBBELL

Subscribed and sworn to before me
this 28ᵗʰ day of April, 2016.

Raymond Guzall III
Notary Public Oakland County, MI
My commission expires: 2-6-2021

15

## JURY DEMAND

Plaintiff demands trial by jury in this matter.

Respectfully submitted,

RAYMOND GUZALL III, P.C.
/s/ Raymond Guzall III
RAYMOND GUZALL III (P60980)
Attorney for Plaintiff
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
(248) 702-6122

16

# EXHIBIT 1

**AFFIDAVIT OF ALPHONSE S. REED**

I, Alphonse S. Reed, make the following statements and general affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of my knowledge:

1.   I am over the age of 18 and I am a resident of the City of Detroit and the State of Michigan.  I have personal knowledge of the facts herein and if called as a witness at trial or other legal proceeding, I will testify competently to the those facts.

2.   During the years of August 2008 and through Jan 2014 I worked as a Parcel Assistant at the FedEx SmartPost in Belleville, until my employment ended.

3.   I am very familiar with Sheryl Hubbell who used to work at the same FedEx SmartPost as I did before she was wrongfully terminated by FedEx SmartPost, as I witnessed her working and witnessed her being harassed by Management.

4.   While at FedEx SmartPost, I had frequent contact with the Management of the location and was in a position to see how the Management interacted with its employees on various issues.

5.   Based upon my personal observations and knowledge from what I witnessed and heard while I worked at FedEx SmartPost, I came to the conclusion that Sheryl Hubbell was discriminated against because she is a female.

6.   Based upon my personal observations and knowledge from what I witnessed and heard while I worked at FedEx SmartPost, I came to the conclusion that Sheryl Hubbell was discriminated against for making complaints about being discriminated against because she is a female.

7.  Based upon my personal observations and knowledge from what I witnessed and heard while I worked at FedEx SmartPost, I also came to the conclusion that Sheryl Hubbell was retaliated against by FedEx SmartPost.

8.  It is my opinion and I came to the conclusion from what I witnessed while I worked at FedEx SmartPost that Sheryl Hubbell would not have been constantly harassed and treated so harshly by Management at FedEx SmartPost if she was a man.

9.  It is my opinion and I came to the conclusion based upon my personal observations and knowledge from my time working at FedEx SmartPost that Management there treated its male employees more favorably than its female employees.

10.  I witnessed many more male employees being promoted and given management positions over more qualified female employees like Sheryl Hubbell.

11.  It is also my opinion and I came to the conclusion based upon my personal observations and knowledge from my time working at FedEx SmartPost that Management demoted Sheryl Hubbell from Lead Parcel Sorter to Parcel Sorter because of her being a female and because of her complaints about Management treating women differently than men when it came to promotions and demotions.

12.  Based upon my personal observations and knowledge from what I witnessed and heard while I worked at FedEx SmartPost, I did not see any reason for Sheryl to be demoted by Management other than the fact that she is a female and new Management under Todd Treman wanted men in Management

positions.

13.   Based upon information I received at FedEx Smart Post when I worked there,
      Sheryl Hubbell once received a 3 cent raise while other employees like myself
      received a 50 cent raise. I believe this was done in order to humiliate and harass
      Sheryl Hubbel in front of her peers because of her complaints of being
      discriminated against.

14.   I witnessed the new Management under Todd Treman at FedEx Smart Post
      harass and mistreat Sheryl Hubbell for approximately 3 years for what I came to
      conclude was because of her being a female and because of her later
      complaints of females being discriminated against at FedEX SmartPost.

15.   From what I witnessed while working at FedEX SmartPost with Sheryl Hubbell
      she was an excellent worker and did her job, and I witnessed her doing her job,
      and she did not deserve the treatment she received once Todd Treman started
      to work at that FedEx SmartPost location. Once Todd Treman came into power,
      I witnessed Management complain about how Sheryll Hubbel was doing her job,
      but she was doing her job the same way she did in the past without any
      complaints about how she did her work. Around December of 2013, I witnessed
      Management began to harass Sheryl Hubbell even more than they had before,
      and they were constantly on her which created a hostile work environment for
      her. I also witnessed Sheryl Hubbell make many complaints to Management
      about how she was being treated and she also complained to me about how she
      was being treated by Management.

16.   I never saw Sheryl Hubbell come into work late or leave work early, and when I

did see her come into work and leave, it was according to her schedule or what

Management made her do.  Sheryl Hubbell was constantly harassed by

Management, as Management would tell her she was in trouble if she worked

over 40 hours per week, or tell her she was in trouble if she left work at or before

her 40 hours per week even though she worked according to the rules and her

schedule.  Management would tell Sheryl Hubbell she was in trouble for leaving

work early, but she did NOT leave work early.  Even though Sheryl Hubbell

would do things right by following the company policy and procedures and doing

what her job required, Management would still constantly harass her and

wrongfully write her up for things that she should not have been written up for.

Alphonse S. Reed

Subscribed and sworn to before me
this 8th day of Sept , 2015.

P. Renee' Parker

Notary Public Wayne , MI
My commission expires:
01/21/2017

# EXHIBIT 2

## AFFIDAVIT OF REBECCA McCLOSKEY

I, Rebecca McCloskey, make the following statements and general affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of my knowledge:

1.  I am over the age of 18 and I am a resident of the City of Belleville and the State of Michigan.   I have personal knowledge of the facts herein and if called as a witness at trial or other legal proceeding, I will testify competently to the those facts.

2.  I worked as a Part-time Parcel Sorter at the FedEx SmartPost in Belleville, from August 9, 2010 until I quit my job on May 8, 2015.

3.  I am very familiar with Sheryl Hubbell who used to work at the same FedEx SmartPost as I did.   In my opinion she was wrongfully terminated by FedEx SmartPost.

4.  I witnessed her working at the FedEx SmartPost in Belleville as well as I worked under her authority in her area when she was a Lead Parcel Sorter.

5.  While at FedEx SmartPost, I had frequent contact with the Management of the location and was in a position to see how the Management interacted with its employees on various issues.

6.  It is my opinion and I came to the conclusion based upon my personal observations and knowledge from my time working at FedEx SmartPost that Management there treated its male employees more favorably than its female employees.

7.  I witnessed many more male employees being promoted and given management positions

1

over more qualified female employees like Sheryl Hubbell and myself.

8.  I witnessed that Management at FedEx SmartPost approved changes in shifts more easily and frequently for male employees if they requested it a lot more than they did for female employees.

9.  I also witnessed the Management at FedEx SmartPost would allow the male employees to leave early more than they would allow female employees.

10. When I was pregnant and my back was hurting, I asked Management if I could leave early and they denied me, yet when a male employee asked the same Manager at FedEx SmartPost if he could leave early because he was hungry, he was granted permission to leave early.

11. Management at FedEx SmartPost would train more male employees to do certain things that could lead to promotions and an increase in pay but they would not do the same for women.

12. Male employees who were Part-Time sorters at FedEx SmartPost like myself, and who I trained, were presented with opportunities that could lead to more income, whereas I not given the same opportunities. I believe that happened to me because I am a female and the Management at FedEx SmartPost preferred male employees to be in Management over female employees.

13. I know of an employee named Michelle Joseph who helped in Quality Assurance at the FedEx SmartPost was denied the Quality Assurance position when it became available and that the position was given to a male named Alan Bokmiller who was less qualified than Michelle Joseph.

2

14.      While I worked there I felt it was a male dominated workplace even though there were

         many female employees but there were not many females in the higher positions.   There

         were many more male Managers than female managers at the FedEx SmartPost in

         Belleville, Michigan.   From what I saw, if Management hired a female manager, that

         female was always put on the lesser desired midnight shift and not allowed to change

         shifts as easily as the male managers.

15.      I witnessed management create a hostile work environment for Sheryl Hubbel as they

         would not give her help when she requested it and they watched her more closely than

         any other employee.   No one was picked on by Management like Sheryl Hubbel was

         picked on.

16.      I witnessed Management not allow Sheryl Hubbell to punch in early with other full-time

         employees like herself, but instead made her stand in line to punch in with the Part-time

         employees like myself.

17.      Based upon information I received at FedEx Smart Post when I worked there, Sheryl

         Hubbell once received a substantially lower raise than everybody else. I believe that was

         done in order to humiliate and harass Sheryl Hubbel in front of her peers because of her

         complaints of being discriminated against.

18.      It is also my opinion and I came to the conclusion based upon my personal observations

         and knowledge from my time working at FedEx SmartPost that Management demoted

         Sheryl Hubbell from full-time Lead Parcel Sorter to full-time   Parcel Sorter because of

         her being a female and because of her complaints about Management treating women

         differently than men when it came to promotions and demotions.

3

19.    Based upon my personal observations and knowledge from what I witnessed and heard while I worked at FedEx SmartPost, I did not see any reason for Sheryl to be demoted by Management other than the fact that she is a female and new Management under Todd Treman wanted men in Management positions.

20.    I witnessed the new Management under Todd Treman at FedEx Smart Post harass and mistreat Sheryl Hubbell for approximately 3 years for what I came to conclude was because of her being a female and because of her later complaints of females being discriminated against at FedEX SmartPost, as well as her EEOC complaints.

21.    I witnessed Management at FedEx SmartPost proceeded to quickly promote Lauren Fishwick, a female, to an assistant dock manager.   Ms. Fishwick originally started as part-time, than Management promoted her to full-time, than promoted her to a Lead and finally to an assistant dock manager in a very short time. I had never witnessed any other employee be promoted so fast in my time there. I believe it was done as a cover up by Management at FedEx SmartPost and to give an appearance that Management does not gender discriminate against female employees.   I believe that this was after Sheryl Hubbel filed her first EEOC complaint alleging gender discrimination.

22.    From what I witnessed while working at FedEX SmartPost with Sheryl Hubbel she was an excellent worker and did her job, and I witnessed her doing her job, and she did not deserve the treatment she received once Todd Treman started to work at that FedEx SmartPost location.   Once Todd Treman came into power, I witnessed Management

4

complain about how Sheryl Hubbel was doing her job even though she was doing her job the same way she always did when she did not receive the complaints.   Around December of 2013, I witnessed Management began to harass Sheryl Hubbell even more than they had before, and they were constantly on her which created a hostile work environment for her.   I also witnessed Sheryl Hubbell make many complaints to Management about how she was being treated and she also complained to me about how she was being treated by Management.

23.   It is also my opinion based upon my personal observations that Sheryl Hubbel was an effective communicator and was always trying to think of ways for the company to improve at the time I worked in her area.   I also worked in the area of Jason Burgos who became a manager and I believe Sheryl Hubbel was a far better communicator than Jason Burgos and Sheryl Hubbel would have made a better Manager.

Rebecca McCloskey

Subscribed and sworn to before me
this _____ day of October _____, 2015.

Notary Public: _____ Wayne _____ County, MI
My commission expires:

SYBIL BUCHANAN
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES May 19, 2018
ACTING IN COUNTY OF   Wayne

5